IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

January 28, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| CHATTANOOGA AREA REGIONAL | ) | HAMILTON COUNTY |
| TRANSPORTATION AUTHORITY | ) | 03A01-9712-CH-00524 |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. HOWELL N. PEOPLES, |
| | ) | CHANCELLOR |
| | ) | |
| T.U. PARKS CONSTRUCTION | ) | |
| COMPANY, a Tennessee | ) | |
| Corporation, and HAYES | ) | |
| DRILLING, INC., a Missouri | ) | |
| Corporation | ) | |
| | ) | |
| Defendants-Appellees | ) | REVERSED AND REMANDED |

TIMOTHY M. GIBBONS OF CHATTANOOGA FOR APPELLANT

RICHARD J. McAFEE and CAMERON S. HILL OF CHATTANOOGA FOR APPELLEE
T.U. PARKS CONSTRUCTION COMPANY

LAWRENCE A. ROUSE and KIRK T. MAY OF KANSAS CITY, MISSOURI; AND
HOYT O. SAMPLES OF CHATTANOOGA FOR APPELLEE HAYES DRILLING, INC.

O P I N I O N

Goddard, P.J.

Chattanooga Area Regional Transportation Authority
(CARTA) appeals a judgment of the Chancery Court for Hamilton
County which sought a declaratory judgment that it was not bound
by the arbitration provisions of a certain contract entered into

with T. U. Parks Construction Company and also injunctive relief to prevent Parks from proceeding with arbitration. The suit also joined as a party Defendant a subcontractor of Parks, Hayes Drilling, Inc., which has sought to arbitrate a claim it had against Parks.

CARTA is a metropolitan authority created pursuant to Chapter 23 of the Chattanooga City Code, as authorized by T.C.A. Title 7, Chapter 56. The controversy before us had its origin in a contract entered into between CARTA and T. U. Parks Construction Company, a general contractor, to build a project known as Shuttle Park North. Subsequent to entering into the contract, Parks entered into a subcontract with Hayes Drilling, Inc., to perform drilling work for caisson foundations as to the project.

A dispute arose between Parks and Hayes relative to whether Hayes was entitled to additional compensation under its subcontract for unanticipated construction problems for which it contended it was entitled to additional compensation.

On or about April 25, 1997, Hayes demanded arbitration as to its claims against Parks, and thereafter, on July 10, 1997, Parks demanded arbitration as to CARTA.

It was CARTA's principal position that it is a governmental entity and, as such, it had no authority to enter

into a contract requiring binding arbitration and that its act in that regard was <u>ultra</u> <u>vires</u>, and not enforceable.

The Chancellor, after issuing a temporary injunction, found that the arbitration clause was valid and declined to convert the temporary injunction he had previously issued into a permanent one.  CARTA appeals, raising the following issues:

   A.   WHETHER THE CHANCELLOR ERRED IN RULING THAT CARTA, A LOCAL GOVERNMENTAL ENTITY, HAS THE POWER TO ARBITRATE?

   B.   WHETHER THE CHANCELLOR ERRED IN RULING THAT THE COMMON LAW PROHIBITION AGAINST LOCAL GOVERNMENTAL ENTITIES FROM INDEMNIFYING THIRD PARTIES WAS NOT APPLICABLE IN THIS CASE?

   C.   ALTERNATIVELY, IF THE CHANCELLOR WAS CORRECT IN HOLDING THAT CARTA HAS THE POWER TO ARBITRATE, DID THE CHANCELLOR ERR IN HOLDING THAT THE DEMANDS FOR ARBITRATION OF T.U. PARKS AND HAYES COMPLIED WITH THE CONTRACTUAL CONDITIONS PRECEDENT?

In furtherance of the construction project, CARTA entered into a standard AIA contract with Parks, which, as pertinent to this appeal, contained the following provisions:

**4.5 ARBITRATION**

**4.5.1 Controversies and Claims Subject to Arbitration.** Any controversy of Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5.  Such controversies or Claims upon which the Architect has

given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party.  Arbitration may be commenced when 45 days have passed after a Claim has been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.

. . . .

**4.5.7 Judgment on Final Award.**  The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Thereafter, apparently Parks and Hayes entered into some type of subcontract in connection with the project.  We say "apparently" because the record discloses a proposal dated May 25, 1995, signed by representatives from Hayes to Parks, but not signed by Parks, and another instrument dated September 9, 1995, generated by Parks, styled "SUBCONTRACT AGREEMENT," signed by neither Parks nor Hayes.  In any event, Hayes commenced its endeavors on the project and after completion thereof a dispute arose as to certain charges claimed by Hayes.  Hayes made a demand for arbitration in accordance with its understanding of the agreement.[1]  Upon this demand being made on Parks, Parks made a demand for arbitration as to this claim against CARTA, which resulted in this suit.

With regard to the principal issue as to this appeal, being whether CARTA had authority to enter into a contract providing for arbitration, we find the case of <u>W. M. Schlosser</u>

---

[1]     It does not appear that either the Hayes proposal or the Parks subcontract contained an arbitration clause.

4

Co. v. School Board, 980 F.2d 253 (4th Cir.1992), particularly significant.

In that case a contractor was suing to require the school board to arbitrate a dispute in accordance with a contract, and the school board defended on the ground that it had no authority to enter into an arbitration agreement and its act in doing so was ultra vires and unenforceable.

In responding to this contention, the 4th Circuit applied what it designated the Dillon Rule[2] and opined as follows (at page 255):

> The question before the court is whether the School Board possesses the authority under the laws of the Commonwealth of Virginia to agree to arbitrate contractual disputes, for if it does not, then any such agreement by the Board is unenforceable as *ultra vires* and the motion to compel arbitration therefore must be denied. *See Richmond Ry. Co. v. Richmond, Etc.,* 145 Va. 266, 299, 133 S.E. 888, 898 (1926) ("When the contract is once declared *ultra vires*, the fact that it is executed does not validate it, nor can it be ratified so as to make it the basis of suit or action, nor does the doctrine of estoppel apply."); *accord Richard L. Deal & Assocs., Inc. v. Commonwealth*, 224 Va. 618, 299 S.E.2d 346 (1983). The resolution of this question depends in turn upon application of the Dillon Rule, a rule of construction applicable in Virginia when determining the powers of local government: "There can be no question that Virginia long has followed, and still adheres to, the Dillon Rule of strict construction concerning the powers of local governing bodies." *Commonwealth v. County Bd.,* 217 Va. 558, 232 S.E.2d 30, 40 (1977).

---

[2]    The Rule takes its name from John F. Dillon, a Federal Circuit Judge, Chief Justice of the Iowa Supreme Court, noted law professor and author of Dillon on Municipal Corp.

According to the Dillon Rule, local governing bodies such as counties, municipal corporations, and school boards "possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." . . . The Rule is strictly construed and strictly enforced by the Virginia Supreme Court and the court does not liberally recognize governmental powers by implication. *See Brown*, 329 S.E.2d at 472 (power to lease realty cannot be implied from county's express power to sell or convey realty); *Commonwealth v. County Bd.*, 232 S.E.2d at 44 (power to bargain collectively cannot be implied from expressly granted powers of school boards to contract, hire employees, and set terms of employment). Significantly, "[i]f there is *any* reasonable doubt whether legislative power exists, that doubt *must* be resolved against the local governing body." *Confrere Club*, 387 S.E.2d at 473 (emphases added); *accord Stallings v. Wall*, 235 Va. 313, 316, 367 S.E.2d 496, 497 (1988).

Schlosser and the School Board agree that the state constitution does not expressly confer the power to arbitrate on Virginia school boards. Both parties also appear to agree that such a power cannot be considered "essential" or "indispensable" to the functioning of school boards. Therefore, if the power to agree to arbitrate is not expressly granted by statute or cannot be implied from a power explicitly conferred on school boards by the General Assembly, it does not exist.

Schlosser contends that the authority to agree to arbitrate is conferred in section 22.1-71 of the Virginia Code. That statute, which lists the corporate powers of the Commonwealth's school boards, provides that every

  school board is . . . vested with all the powers and charged with all the duties, obligations and responsibilities imposed upon school boards by law and may sue, be sued, *contract*, be contracted with and, in accordance with the provisions of this title, purchase, take, hold, lease and convey school property....

Va. Code Ann. § 22.1-71 (Michie 1985) (emphasis added). Schlosser asserts that because the School Board has the "capacity to contract, [it] . . . clearly has the power to enter into construction contracts containing arbitration provisions for the resolution of claims relating to the contract." Appellant's Br. at 10-11.

It is not entirely clear whether Schlosser contends that the grant of the power to contract in section 22.1-71 is an express conferral of the power to agree to arbitrate or whether it contends that the power to arbitrate is implied in the power to contract. While neither contention is without force, ultimately each fails. Both the Public Procurement Act, Virginia Code §§ 11-35 *et seq.*, and section 15.1-508 of the Virginia Code confirm that the Virginia General Assembly does not consider the grant of a right to contract as expressly conferring a right to agree to arbitrate. It is also evident from these statutes, especially when they are construed strictly as required by the Dillon Rule, that we are not at liberty to imply such a right from the School Board's right to contract.

In <u>Schlosser</u>, as here, the contractor contended that even if state law does not permit arbitration, the Federal Statute, which does, overrules state law. In disposing of this question the <u>Schlosser</u> Court stated the following (at page 258):

Schlosser, perhaps anticipating our holding, contends that the Federal Arbitration Act preempts application of the Dillon Rule. It argues that any state law, such as the Dillon Rule, that prohibits enforcement of an arbitration agreement runs afoul of the FAA because the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Memorial Hosp. V. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), which requires that federal courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985). This argument is unavailing.

The FAA does embody "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1,

10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). This policy is enunciated broadly in section 2 of the FAA, which provides in pertinent part that

7

[a] written provision in ... a contract evidencing a
transaction involving commerce to settle by
arbitration a controversy thereafter arising out of
such contract or transaction, ... shall be valid,
irrevocable, and enforceable, *save upon such grounds
as exist at law or in equity for the revocation of
any contract.*

9 U.S.C. § 2 (emphasis added). And we have held that
"[t]he language of [section 2] requires that states
place *no greater* restrictions upon arbitration
provisions than they place upon other contractual
terms," and that generally, "if a state law *singles out*
arbitration agreements and limits their enforceability
it is preempted." *Saturn Distrib. Corp. v. Williams*,
905 F.2d 719, 722 (4th Cir.) (emphases added; footnote
omitted), *cert. Denied*, ____ U.S. ____, 111 S.Ct. 516,
112 L.Ed.2d 527 (1990). In *Saturn*, for example, we
invalidated a provision of the Virginia Motor Vehicle
Dealer Licensing Act which prohibited automobile
manufacturers and dealers from entering into agreements
that included mandatory alternative dispute resolution
provisions. We held that the provision was preempted
by the FAA because it "singled[d] out arbitration
clauses and unreasonably burden[ed] the ability to form
arbitration agreements." 905 F.2d at 723.

The Dillon Rule, however, does not single out and
disproportionately burden arbitration provisions. It
is a rule of general applicability that defines and
invalidates all *ultra vires* acts of local governing
bodies. Unlike the provision drawn into question in
*Saturn*, the Rule is not "an idiosyncratic rule specific
to arbitration agreements," but is instead "merely an
unremarkable part of Virginia's general laws of
contract formation." *Id*. at 725. As "a general rule
of contract formation," *Supak & Sons Mfg. Co. v. Pervel
Indus., Inc.*, 593 F.2d 135, 137 (4th Cir.1979), it
constitutes a "ground[] as exist[s] at law or in equity
for the revocation of any contract," within the meaning
of 9 U.S.C. § 2. As such, it falls within the
exception to section 2's general rule of enforceability
of arbitration provisions, and therefore is not
preempted by the FAA. *See Perry v. Thomas*, 482 U.S.

483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) (under the FAA, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally") (emphasis in original); *Supak*, 593 F.2d at 137 ("Section 2 [of the FAA] dictates the effect of a contractually agreed-upon arbitration provision, but it does not displace state law on the general principles governing formation of the contract itself.").

We recognize that the Federal Circuit Court was applying the general law of Virginia in <u>Schlosser</u> relative to authority of governmental bodies to contract, but we find the law of Virginia on this question to be almost identical to the law of this State.

We accordingly conclude that <u>Schlosser</u> is an appropriate case for us to follow. Consequently, we find the action of CARTA in executing the contract providing for arbitration was <u>ultra</u> <u>vires</u>.

Our determination that <u>Schlosser</u> is appropriate authority is reinforced by the fact that at least one older Tennessee case, <u>Nashville v. Sutherland & Co.</u>, 92 Tenn. 335, 21 S.W. 674 (1893), quotes with approval the Dillon Rule, and the

9

further fact that the enabling State statute authorizes arbitration only as to labor disputes.[3]

In reaching this decision, we are aware that in at least one case involving a municipality,[4]--a case mentioned by the Chancellor in his bench opinion--a contract containing an arbitration clause was the subject of a suit, but in that case no attack was made as to the validity of the clause and the Chancellor himself conceded that it was not authority in the case at bar.

Finally as to this issue, we are also aware that the general Tennessee arbitration statute[5] does not exempt governmental entities, but we believe that under the Tennessee rule as to the authority of such entities, it would be necessary

---

[3]    T.C.A. 7-56-102 (d) and (e) provide the following:

(d) The municipality, county, or combination thereof, or a transit authority created under the provisions of this part, has the power and authority to bargain collectively with labor organizations representing employees and may enter into agreements with such organizations relative to wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances of such employees.

(e) In the case of any labor dispute involving such employees where collective bargaining does not result in a settlement, the same shall be submitted at the written request of either party to final and binding arbitration, pursuant to the provisions of any agreement entered into so providing, or in the absence of such provisions, with the written consent of both parties. . . .

[4]    Wileman v. Mayor and Aldermen, Etc., 29 Tenn.App. 172, 195 S.W.2d 325 (1946).

[5]    T.C.A. Title 29, Chapter 5.

for the arbitration statute to specifically include them before they would be authorized to enter into an arbitration agreement.

In light of our disposition of the first issue, it is unnecessary that we address the other two.

Because no issue is raised as to the right of Hayes to require arbitration, the stay issued by this Court as to that feature of the case is lifted.

For the foregoing reasons the judgment of the Trial Court is reversed and the relief sought by CARTA in the Trial Court is granted. Costs of appeal, as well as costs below, are adjudged against Parks.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Don T. McMurray, J.

_____
Charles D. Susano, Jr., J.

11